**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CEDRIC ATCHISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 2:16-cv-931-LCB** |
| | ) | |
| **CELLCO PARTNERSHIP d/b/a** | ) | |
| **VERIZON WIRELESS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Cedric Atchison, asserts claims against his former employer, Cellco Partnership d/b/a Verizon Wireless ("Verizon" or "defendant"), for race discrimination and retaliation pursuant to 42 U.S.C. § 1981, and for interference with his rights under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*  This memorandum opinion addresses defendant's motion for summary judgment (Doc. 30).  After considering the motion, the parties' briefs, and the evidentiary submissions, this court concludes the motion is due to be granted in part and denied in part.

## I. STANDARD OF REVIEW

A district court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a mater of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "when 'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" *Quigg v. Thomas County School District*, 814 F.3d 1227, 1235 (11th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (alteration in original). All facts and inferences must be construed in the light most favorable to the non-moving party. *Ranbaxy Laboratories, Inc. v. First Databank, Inc.*, 826 F.3d 1334, 1338 (11th Cir. 2016) (citing *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007)). But that favorable construction is not unlimited. "In opposing a motion for summary judgment, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Transcontinental Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130, 1154 (11th Cir. 2018) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). "In other words, if the evidence produced by the nonmoving party is 'merely colorable, or is not significantly probative, summary judgment may be granted.'" *Transcontinental Gas Pipe Line Co., LLC*, 910 F.3d at 1154 (quoting *Anderson*, 477 U.S. at 249-50).

## II. STATEMENT OF FACTS

Plaintiff, Cedric Atchison, a black male, worked as a retail sales associate in

a Verizon Wireless store in Trussville, Alabama. In the spring of 2014, he suffered complications from oral surgery that required him to take time off work. (Doc. 30-1, p. 18-19 (Atchison Depo., p. 62-65, 67-68)). He applied for FMLA leave and short-term disability benefits from MetLife, the third party that administered leave for all Verizon employees. The application was approved, allowing plaintiff to take FMLA leave and receive short-term disability payments from April 19, 2014, to June 22, 2014. (Doc. 30-1, p. 127 (Ex. 7), p. 138 (Ex. 15), p. 150 (Ex. 20)). Plaintiff returned to work on June 23, 2014, even though he did not think he was physically and emotionally ready, because his approved leave had expired. (Doc. 30-1, p. 22 (Atchison Depo., p. 78-80)).

Plaintiff worked through August 22, 2014, but he had a car accident on August 23 and did not return to work after the accident. In fact, he testified that he "shut it down," not driving or leaving his house at all because he suffered a visible facial injury in the accident. Plaintiff informed Kathy Williams, a co-worker who had been designated as the person responsible for communicating with plaintiff about his leave, that he would need additional time off work. Williams told him to take care of himself and not to push it if he did not feel like it. He also tried to inform his supervisor, Kerry Gould, who is white, but Gould either did not answer his calls or simply instructed him to talk to Williams instead. Finally, he discussed his need for

additional leave with Michelle Dennis, Verizon's Human Resources Business Partner for the region encompassing plaintiff's store. Dennis told him to check in with his supervisor and "follow the correct channels" with MetLife. (*Id.,* p. 96-102).

Verizon sent plaintiff a letter on October 15, 2014, stating that, because his FMLA leave and short-term disability benefits had expired, his "continued absence from the workplace is considered unauthorized, unexcused and attendance impacting." (Doc. 30-1, p. 146 (Ex. 18)). Verizon informed plaintiff that, by October 22, 2014, he should either return to work, with medical documentation supporting his absence since the end of his leave period, or provide medical documentation to support his continued need to remain off work. If he did not comply, he would be placed on an unauthorized leave of absence, and his employment would be subject to termination for job abandonment. (*Id.*). On October 16, 2014, plaintiff submitted an appeal of MetLife's decision to close his first claim for FMLA leave and short-term disability benefits as of June 22, 2014. (Doc. 30-1, p. 25 (Atchison Depo., p. 90), p.. 148-149 (Ex. 19)). MetLife denied that appeal on October 22, 2014. (Doc. 30-1, p. 150 (Ex. 20)).

Plaintiff also submitted a second claim for FMLA leave and short-term disability beginning September 7, 2014. (Doc. 30-1, p. 25, 30 (Atchison Depo., p. 90, 111-112)). MetLife denied the new claim for short-term disability benefits on

October 22, 2014. (Doc. 30-1, p. 151-152 (Ex. 21)). Also on n October 22, 2014, MetLife informed plaintiff that he met the minimum eligibility requirements for additional FMLA leave, meaning that he had not exhausted his available leave hours for that year. (Doc. 30-1, p. 153 (Ex. 22)). Even so, it sent him another letter on October 23, 2014, stating that he would need to submit a Health Care Provider Certification form within seventeen days in order to be approved for a leave of absence. (Doc. 30-1, p. 154 (Ex. 23)).

Plaintiff testified at deposition that he either provided the requested information or directed his doctor to provide the information. (Doc. 30-1, p. 25, 41 (Atchison Depo, p. 90, 114)). He also stated in his affidavit that his doctor faxed the requested information to MetLife. (Doc. 35-2, p. 3 (Atchison May 4, 2018 Declaration, ¶ 9)). The summary judgment record does not contain a copy of any paperwork plaintiff or his doctor submitted, and his doctor was not deposed. MetLife denied plaintiff's request for FMLA leave on November 17, 2014, because it had not received an updated Health Care Provider Certification. (Doc. 30-1, p. 156 (Ex. 24)).

Verizon apparently decided to overlook plaintiff's failure to return to work by October 22, 2014, as he had been instructed to do in the October 15 letter, while MetLife was evaluating plaintiff's appeal and additional claims. Still, when plaintiff did not return to work after his second claim for FMLA leave was denied, Verizon

sent him a letter on January 28, 2015, stating that his "continued absence from the workplace is considered unauthorized, unexcused and attendance impacting." (Doc. 30-1, p. 157 (Ex. 25)). Verizon informed plaintiff that, by February 4, 2015, he should either return to work, with medical documentation supporting his absence since the end of his leave period, or provide medical documentation to support his continued need to remain off work. If he did not comply, he would be placed on an unauthorized leave of absence, and his employment would be subject to termination for job abandonment. (*Id.*).

After receiving the January 28 letter, plaintiff testified that he either faxed or e-mailed additional paperwork supporting his need for a leave of absence to both MetLife and Verizon. (Doc. 30-1, p. 32-34 (Atchison Depo., p. 120-126)). He asked his doctor to submit additional paperwork to MetLife, and he also sent additional paperwork to Kathy Williams, who forwarded it to MetLife. (Doc. 30-1, p. 34-36 (Atchison Depo., p. 127-134); Doc. 35-2, p.3 (Atchison May 4, 2018 Declaration, ¶¶ 10-12). Williams testified, however, that she transferred to a different store in November 2014. She had one conversation with plaintiff about two weeks later, but after that, she did not assist him with his leave requests or have any conversations with him about his leave. (Doc. 30-6, p. 89-91 (Williams Depo., p. 347-354)). In any event, defendant again disputes that either it or MetLife received any additional

paperwork from plaintiff, Williams, or plaintiff's doctor, and there no copies of any additional paperwork in the record. Plaintiff attempted to contact Kerry Gould every day, but Gould never returned any of his phone calls or texts, instead deferring to plaintiff's communications with Kathy Williams. Plaintiff also testified that he left a voice mail for Michelle Dennis, but she did not return his call. (Doc. 30-1, p. 36 (Atchison Depo., p. 134)). Plaintiff's cell phone records show that he called Michelle Dennis once on August 14, 2014, once on August 15, 2014, and once on October 13, 2014, but the records do not show any calls placed after January 28, 2015. (Doc. 30-5 (Phone Records), p. 35, 45; Doc. 30-3, p. 46 (Dennis Depo., p. 179)). Plaintiff also testified that he regularly talked to Danielle Gaebele (formerly Danielle Sauer), the member of Verizon's Absence Management Team who sent him the January 28 letter, during this time period. (Doc. 30-1, p. 35-36 (Atchison Depo., p. 131-135)). But his phone records show that he called Gaebele twice on June 13, 2014, twice on June 25, 2014, once on June 27, 2014, and twice on October 21, 2014. (Doc. 30-5 (Phone Records), p. 24-25, 46; doc. 30-1, p. 157-160 (Ex. 25-27)). Other than a February 9, 2015 call discussed below, there are no further calls to Gaebele's number.

Gaebele sent plaintiff another letter on February 5, 2015, notifying him that he had been placed on an unauthorized leave of absence due to his failure to submit documentation to support his continued absence from work, or to contact Verizon as

requested to address the issue. Plaintiff was advised that if he did not either return to work or provide the requested documentation by February 9, 2015, his employment would be terminated for job abandonment. (Doc. 30-1, p. 159 (Ex. 26)). Plaintiff left a voice mail message for Gaebele on February 9, but there is no information in the record about the content of the voice mail because Gaebele did not document the message according to office procedure. (Doc. 30-2, p. 9 (Gaebele Depo., p. 29-30)). Gaebele called plaintiff back on February 10 and left a voice mail, and she made two attempts to contact him at two different numbers on February 11, leaving a voice mail at only one number because the mail box had not been set up at the other number. (*Id.,* p. 34-40). Plaintiff did not return Gaebele's phone calls.

Gaebele decided to recommend the termination of plaintiff's employment for job abandonment. As required by office protocol, she first sought and received the permission of both her supervisor and the local Human Resources Business Partner — in this case, Michelle Dennis. (*Id.,* p. 19-22, 95-96). Gaebele then sent plaintiff a letter on February 13, 2015, stating:

> We have made multiple attempts to engage in the interactive process with you regarding your absence from the workplace. As of today, you have failed to respond to our attempts to assist you, you have failed to submit any documentation, and you have failed to return to work. Therefore, we have concluded that you have elected to abandon your position of Solutions Specialist and therefore have been removed from the Verizon Wireless payroll effective today, February 13, 2015. (Doc. 30-1, p. 160 (Ex. 27)).

# III. DISCUSSION

## A.       Framework For Claims Under 42 U.S.C. § 1981

42 U.S.C. § 1981 states:

(a) Statement of equal rights.  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined.  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment.  The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

The statute authorizes claims for race-based harassment, employment discrimination, and retaliation.  *Moore v. Grady Memorial Hospital Corp.*, 834 F.3d 1168, 1171 (11th Cir. 2016); *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257-58 (11th Cir. 2012).  Those claims have "the same requirements of proof and use the same analytical framework" as the corresponding claims filed under Title VII of the Civil Rights Act of  1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *Gate Gourmet, Inc.*, 683 F.3d at 1256-57 (citing *Standard v. A.B.E.L. Services, Inc.*, 161

F.3d 1318, 1330 (11th Cir. 1998)). Therefore, cases discussing Title VII claims have equal application to claims asserted under § 1981, and *vice versa*. *Standard,* 161 F.3d at 1330.

## B.    Hostile Work Environment

The statutory prohibition against discrimination extends to a prohibition against "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

> To prove a hostile work environment claim, an employee must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citation and internal quotation marks omitted). When the employee's harassment claim is based on her race, she must prove five elements: (1) she belongs to a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her race, (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for the environment under a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

*Smelter v. Southern Home Care Services, Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018).

The parties dispute whether plaintiff pled a viable claim for a race-based hostile work environment and, if so, whether defendant has asserted a valid argument that summary judgment should be granted in its favor on that claim. Plaintiff's complaint did not include a separate cause of action for race-based harassment or a race-based

hostile work environment. Instead, under plaintiff's Count One, which is labeled

"Statement of Plaintiff's Racial Discrimination Claims Pursuant to 42 U.S.C. § 1981,"

he makes the general allegation that "Defendant subjected Plaintiff to adverse

treatment, harassment, a hostile working environment and discrimination with respect

to the terms and conditions of his employment. Plaintiff was terminated." (Doc. 1,

¶ 38). Although plaintiff's attorneys could (and should) have pled that claim more

artfully, the court concludes that the complaint did assert a hostile work environment

claim.

Defendant addressed that claim in its motion for summary judgment, but only

by stating the following:

> Finally, to the extent Atchison attempts to bring a hostile work environment or harassment claim based upon a passing reference in his Complaint (*see* Doc. 1, ¶ 38), that claim fails for lack of any evidence to show a hostile work environment that was sufficiently [severe] or pervasive to alter the terms and conditions of work. Moreover, Atchison's Complaint appears to allege that the alteration of terms and conditions was his separation for job abandonment in February, 2015 (*See* Compl. ¶ 38 ("Plaintiff was terminated")), but Atchison's separation many months after any alleged harassment could not support a claim for hostile work environment, even if Atchison adequately asserted one in his Complaint (which he did not). [Doc. 30, ¶ 6].

In its brief supporting the motion for summary judgment, defendant did not make any

legal arguments, did not explain why the evidence was insufficient to support the

claim, and, indeed, did not mention the claim at all. (*See* Doc. 31).

Defendant's cursory mention of the hostile work environment claim in its motion for summary judgment did not satisfy its burden of demonstrating that it is entitled to summary judgment. As the Supreme Court has stated, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Defendant's reply brief contains only one sentence with substantive argument about the hostile work environment claim: "And even if Atchison did plead a harassment claim, his allegations that Kerry Gould made certain comments about his fiancé and car during the few months they worked together do not approach the level of 'severe or pervasive' conduct required for an actionable harassment claim under Eleventh Circuit law." (Doc. 38, p. 11). Setting aside the question of whether it is fair for defendant to be allowed to assert arguments for the first time in its reply brief, the arguments it makes still fall far short of satisfying its burden. Even though defendant followed the quoted sentence with a footnote citing four cases in which allegedly harassing behavior was determined to be insufficiently severe or pervasive to establish an actionable hostile work environment (*see id.*, p. 10 n.11), it failed to identify the comments in question, point to their location in the evidentiary record,

or explain why the cases cited in the footnote should apply to the present situation.

Defendant's motion for summary judgment will be denied with regard to plaintiff's hostile work environment claim, and that claim will proceed to trial.

## C.     Race Discrimination and Retaliation

Plaintiff offers only circumstantial, not direct, evidence of defendant's discriminatory and retaliatory intent. Accordingly, the court must evaluate his claims under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Flournoy v. CML-GA WB, LLC*, 851 F.3d 1335, 1339 (11th Cir. 2017) (applying the burden-shifting framework in a § 1981 case).

> Under the *Douglas/Burdine* framework, plaintiff bears the initial burden of establishing a *prima facie* case, which creates a rebuttable presumption of discriminatory [or retaliatory] intent. *McDonnell*, 411 U.S. at 802, 93 S.Ct. 1817. Defendant must then rebut that presumption by producing evidence of a legitimate, nondiscriminatory [or non-retaliatory] reason for its action. *Id*. at 802-03, 93 S. Ct. 1817. If defendant bears its burden of production, plaintiff must establish that defendant's proffered reason is but a pretext for unlawful discrimination[ or retaliation]. *Tex. Dep't*, 450 U.S. at 256, 101 S.Ct. 1089.]

*Flournoy*, 851 F.3d at 1339. *See also Gogel v. Kia Motors Manufacturing of Georgia, Inc.*, 904 F.3d 1226, 1233 (11th Cir. 2018) ("Retaliation claims under § 1981 are analyzed under this same framework.").

To establish a *prima facie* case of race-based employment discrimination, a plaintiff must show that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) similarly situated employees outside his protected class were treated more favorably; and (4) he was qualified to do the job. *Smelter v. Southern Home Care Services, Inc.*, 904 F.3d 1276, 1288 (11th Cir. 2018) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004)).

> Title VII [also] makes it unlawful for an employer to fire an employee because she "opposed any practice made an unlawful employment practice" under Title VII or because she has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). "To establish a *prima facie* case of retaliation under Title VII, the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (*per curiam*) (quotation omitted).

*Gogel v. Kia Motors Manufacturing of Georgia, Inc.*, 904 F.3d 1226, 1233 (11th Cir. 2018).

It is not necessary to determine whether plaintiff has satisfied every element a *prima facie* case of race-based discrimination and retaliation, because, even if he did, defendant has offered a legitimate, non-discriminatory, and non-retaliatory reason for its decision to terminate plaintiff's employment: that he abandoned his job by remaining absent without an excuse for more than five months. *See Word v. AT & T*, 576 F. App'x 908, 913 (11th Cir. 2014) (proceeding under the assumption that

-14-

five consecutive unexcused absences in one week was a legitimate, non-discriminatory reason for a termination decision); *Udeh v. Winn-Dixie Montgomery, LLC*, No. 2:11-CV-1722-MHH, 2015 WL 1486954, at *9 (N.D. Ala. Mar. 31, 2015) (citing *Anderson v. JPMorgan Chase & Co.*, 418 F. App'x 881, 884 (11th Cir. 2011)); *Perez v. Brands Mart Service Corp*., No. 10-61203-CIV, 2011 WL 3236022, at *11 (S.D. Fla. July 28, 2011)) ("Job abandonment is a legitimate basis for termination.").

Because defendant has satisfied its burden of articulating a legitimate reason for the decision to end plaintiff's employment, plaintiff can prevail only by showing that the proffered reason actually is a mere pretext for unlawful discrimination and/or retaliation.

> "[A] reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Springer v. Convergys Customer Mgmt. Grp. Inc*., 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty*., 446 F.3d 1160, 1163 (11th Cir. 2006)). The employee must rebut the reason "head on" and "cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp*., 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*); *see also Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) (explaining that, where more than one legitimate reason is given, the plaintiff must rebut each one). At the summary judgment stage, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (alteration in original) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

*Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018) (alterations in original). Pretext must be established, like all other aspects of a plaintiff's case, by the presentation of "actual evidence," because "'[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext.'" *Center v. Secretary, Department of Homeland Security, Customs & Border Protection Agency*, 895 F.3d 1295, 1303 (11th Cir. 2018) (quoting *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1313 (11th Cir. 2016)) (alteration in original).

Plaintiff argues that defendant's proffered reason is pretext because there is a genuine factual dispute regarding whether he abandoned his job. Plaintiff does not dispute that he failed to return to work after August 23, 2014. Instead, he argues that his absence from work did not constitute abandonment because defendant knew he "was supplying the necessary information to secure medical leave, but it chose to terminate him nonetheless." (Doc. 34, p. 22). Normally, plaintiff's testimony that he and/or his doctor sent the necessary documentation to Verizon and MetLife would be enough to create a fact dispute, because a reasonable jury could infer that plaintiff supplied the requested information, and that defendant chose to ignore the evidence because it wanted to cover up its discriminatory or retaliatory desire to fire plaintiff. Here, though, plaintiff has not produced a copy of the documents that allegedly were sent, a fax or email confirmation, or even corroborating testimony from his doctor

who supposedly sent the documents. Defendant's employees testified that they never received any such documentation, and there is no notation in plaintiff's file with either MetLife or Verizon that the documentation was received or considered.

Those facts are important, because, at the pretext stage, the relevant inquiry is not whether plaintiff actually *did* attempt to provide the requested information, but whether defendant was *aware* of those attempts. If defendant had no knowledge of plaintiff's attempts, it still could have a reasonable belief that he had abandoned his job. *See Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."); *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) ("The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any *prima facie* case of disparate treatment by showing that it honestly believed the employee committed the violation."); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995) ("Pretext is not demonstrated by showing simply that the employer was mistaken."). Therefore, this is one of those exceptional cases in which a plaintiff's self-serving testimony will not, standing alone, create a material fact dispute. *See Flowers v. Troup County, Georgia, School District*, 803 F.3d 1327, 1337-38 (11th Cir. 2015) (granting summary judgment where the plaintiff had not "produced any evidence, outside of his

own conclusory say-so, that would support an inference of racial discrimination from the circumstances"); *Hayes v. Deluxe Manufacturing Operations LLC*, No. 116CV02056RWSRGV, 2018 WL 1461690, at *16 (N.D. Ga. Jan. 9, 2018), *report and recommendation adopted*, No. 1:16-CV-2056-RWS, 2018 WL 1869825 (N.D. Ga. Feb. 21, 2018) (rejecting a plaintiff's testimony that she submitted the required medical certification to support an FMLA application when the plaintiff could not produce a copy of the certification or offer any other evidence that the certification had been submitted).

The sole case cited by plaintiff, *Boutwell v. Federal-Mogul Corp.,* 342 F. App'x 541 (11th Cir. 2009), is distinguishable. In *Boutwell,* the issue was whether the employer violated Alabama law by firing the plaintiff because she missed work for jury duty. The plaintiff testified that she reported her absence, as required by company policy, by leaving a voice mail message on the company's main line, but plaintiff's supervisor and the human resources manager testified that they did not hear plaintiff's message before deciding to fire her. *Id.* at 544. The Eleventh Circuit found that the conflicting testimony created a fact dispute precluding summary judgment as to whether the employer's proffered reason for firing plaintiff was pretextual. *Id.* at 547. As the Eleventh Circuit put it,

> one struggles to think of what evidence [the plaintiff] could produce to prove that [her supervisor] and/or [the human resources manager] heard

> her messages. [The human resources manager] testified that Federal-Mogul had no system for saving or documenting the messages left on the main line and that "the only evidence [one] would be able to obtain about calls made to [the main line] would be" his testimony.

*Id.* (last two alterations in original).

Here, there is no struggle to imagine what evidence plaintiff could have produced to prove that defendant was actually aware of his efforts to submit additional medical information. Possibilities include a fax or e-mail confirmation, a copy of the actual fax and/or e-mail, a copy of the medical records themselves, a notation in defendant's or MetLife's records, or corroborating testimony from plaintiff's physician. This is not a "he said/she said" dispute; it is "he said, but there is a significant lack of supporting evidence that ought to be readily available." Such a situation does not have to be resolved with a generous construction in plaintiff's favor. There is no *reasonable* inference to be drawn that defendant was actually aware of any attempts by plaintiff to provide the requested information.

Because plaintiff failed to prove that defendant's proffered legitimate, non-discriminatory reason for terminating his employment was a mere pretext for unlawful discrimination or retaliation, his race discrimination and retaliation claims under 42 U.S.C. § 1981 must fail.

## D.  FMLA Interference

Plaintiff also asserts that defendant unlawfully interfered with his rights under

the FMLA,[1] which grants an eligible employee the right to take up to twelve workweeks of unpaid leave annually "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA creates a private right of action against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights provided by the Act. 29 U.S.C. §§ 2615(a)(1), 2617(a). "[T]o succeed on an FMLA interference claim an employee need only demonstrate by a preponderance of the evidence that [he] was entitled to an FMLA benefit that was denied." *Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018) (citing *Strickland v. Water Works & Sewer Board of City of Birmingham*, 239 F.3d 1199, 1206-07 (11th Cir. 2001)). The employer's intent or motive is irrelevant to an interference claim. *Id.* (citing *Strickland*, 239 F.3d at 1208).

Plaintiff's claim cannot succeed because he has was never denied any right to which he was entitled under the FMLA. Plaintiff used nine of his twelve available weeks of FMLA leave between April 19 and June 22, 2014. He only had three more weeks available, and yet he was off work for more than five months before his employment was terminated on February 13, 2015. As discussed above, there is no

---

[1] Although the extent of plaintiff's FMLA claim was not clear from the language of his complaint, he has since expressly disavowed any FMLA retaliation claim. *See* doc. 34, p. 21 n.8 ("Mr. Atchison did not plead nor prove an FMLA retaliation claim.").

evidence that plaintiff ever submitted the documentation required to support his requests for additional leave.

## IV. CONCLUSION

Accordingly, and for the reasons stated above,

IT IS ORDERED that the defendant's motion for summary judgment (Doc. 30) is GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED in defendant's favor on plaintiff's claims for race-based discriminatory termination and retaliation pursuant to 42 U.S.C. § 1981, and on plaintiff's claim for FMLA interference. Summary judgment is DENIED on plaintiff's claim for a race-based hostile work environment pursuant to 42 U.S.C. § 1981, and that claim will proceed to trial.

IT IS FURTHER ORDERED that this matter is set for a telephonic status conference on **Friday, February 15, 2019, at 10:00 a.m. CST**. The Court will email counsel the dial-in information for the conference.

**DONE** and **ORDERED** this January 30, 2019.

_____
LILES C. BURKE
U.S. DISTRICT JUDGE